UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No. 0:12-cv-62392-CIV-MOORE-MCALILEY

THE TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA and ST. PAUL
FIRE AND MARINE INSURANCE
COMPANY,

    *Plaintiffs/Counter Defendants,*

v.

ANDA, INC. and WATSON
PHARMACEUTICALS, INC.,

    *Defendants/Counter Plaintiffs.*
_____/

FEDERAL INSURANCE COMPANY and
GREAT NORTHERN INSURANCE
COMPANY,

    *Plaintiffs/Counter Defendants,*
v.

ANDA, INC.,

    *Defendant/Counter Plaintiff.*
_____/

ANDA, INC.,

    *Defendant/Counter Plaintiff,*
v.

GEMINI INSURANCE COMPANY,

    *Counter Defendant.*
_____/

## FEDERAL INSURANCE COMPANY AND GREAT NORTHERN INSURANCE COMPANY'S MOTION FOR FINAL SUMMARY JUDGMENT

Federal Insurance Company and Great Northern Insurance Company (jointly, "Federal"), pursuant to Federal Rule of Civil Procedure 56 and S.D. Local Rule 56.1, move the Court to enter summary judgment holding that Federal has no duty to defend or indemnify Anda, Inc. ("Anda"). Federal has no duty to defend or indemnify Anda, a distributor of prescription drugs, because the lawsuit brought by the State of West Virginia ("Underlying Lawsuit") seeks economic damages arising out of Anda's distribution of prescription drug products into West Virginia. The law instructs entry of summary judgment on two independent grounds: (1) the insurance policies issued by Federal provide no insurance coverage for the economic damages in the Underlying Lawsuit because there is no allegation of "bodily injury" caused by an "occurrence"; and (2) the insurance policies issued by Federal expressly exclude insurance coverage for damages "arising out of" Anda's distribution of prescription drug products into West Virginia. Federal need only prevail on one of these two issues. Another federal court *and* the Florida Supreme Court have each independently resolved these two issues in favor of the insurer.

The federal court in *Cincinnati Ins. Co. v. Richie Enter. LLC*, 2014 WL 3513211 (W.D. Ky. July 16, 2014), considered the same first issue: Does the Underlying Lawsuit allege "bodily injury" sufficient to trigger the duty to defend a prescription drug distributor under a commercial general liability ("CGL") insurance policy? The *Richie* court, considering the same allegations (against one of Anda's co-defendants in the Underlying Lawsuit) and a CGL policy with language materially identical to the Federal policies, held that the CGL insurer had no duty to defend the prescription drug distributor because there is no allegation of "bodily injury" in the Underlying Lawsuit. *Richie* resolves the first issue under the same underlying allegations and the same CGL insurance policy language regarding "bodily injury." The *Richie* decision is singularly dispositive of the present case.

On the second issue, the Florida Supreme Court held that a products-completed operations hazard exclusion in Federal's CGL policy form excludes insurance coverage when a governmental entity sues for economic damages arising out of the insured's distribution of its products (i.e., guns). *Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.*, 913 So. 2d 528, 530 (Fla. 2005). Thus, even if Anda could persuade the Court to ignore *Richie*'s holding and find that West Virginia alleged "bodily injury," which is the threshold issue, Anda would then have to

persuade the Court to ignore the Florida Supreme Court's holding in *Taurus*. This Anda cannot do because *Taurus* held that this Federal CGL policy form provides no insurance coverage when a government sues for economic damages arising out of the insured's products. The *Richie* and *Taurus* courts got it right, and Federal is entitled to summary judgment.

## BACKGROUND

At issue are six CGL insurance policies issued by Federal to Andrx Corporation ("Andrx")[1] that were in force during the time period from January 1, 2001 through November 6, 2006 ("Federal CGL Policies").[2] *See* Federal's Statement of Undisputed Facts ("SOF"), ¶¶ 16, 18. The Federal CGL Policies are standard premises liability insurance contracts that insure "bodily injury" caused by an "occurrence" (or accident). *Id.* at ¶¶ 28, 29. The Federal CGL Policies expressly exclude insurance coverage for the "products-completed operations hazard," which is defined as damages "arising out of" the insured's products or completed operations. *Id.* at ¶¶ 30-33.

*Taurus* makes clear that Anda would have needed a products liability insurance policy to protect itself from the liability arising from the distribution of pharmaceutical products. It is undisputed that during the time when the Federal CGL Policies were in force that Anda in fact procured products liability insurance policies from other insurers ("Products Policies"). *Id.* at ¶¶ 21, 22. Even after the expiration of the terms of the Federal policies, Anda continued to secure Products Policies each year, including, of course, the Gemini Insurance Company Products Policy at issue in this consolidated action. *Id.* at ¶ 23. Anda admits that it "purchased the Gemini [Products] Policy for one reason: to obtain coverage for potential liability arising from the products it distributes." *Id.* at ¶ 25.

---

[1] Anda is a wholly owned subsidiary of Andrx. For purposes of the present motion it will be assumed that Anda is a named insured under the policies. Though the policies were procured by Andrx, and Andrx is the named insured under all the Federal policies, this motion will refer only to Anda and will make no further distinction between Andrx and Anda.

[2] As noted, the 2001 – 2002 policy was issued by Great Northern, the 2002 – 2007 policies were issued by Federal. SOF, ¶¶ 16, 18. Great Northern and Federal are both affiliated with Chubb Group of Insurance Companies. Cavanaugh Dec., ¶ 2. The January 1, 2006 policy was originally issued to be in force through January 1, 2007, but the policy was canceled by endorsement mid-term on November 6, 2006. SOF, ¶ 19.

It is undisputed that the State of West Virginia seeks to recover economic damages and that those economic damages allegedly arise out of Anda's distribution of prescription drug products into the state. The Underlying Lawsuit states that Anda "distribute[s] prescription drugs closely identified with the prescription drug abuse problem in West Virginia" and was an "integral part of the Pill Mill process." Am. Compl. ¶¶ 2, 4. As a result, "[t]he State of West Virginia seeks to recover the damages it has incurred and continues to incur and will incur in the future in addressing and combating the prescription drug abuse epidemic in West Virginia and in addressing its effects." *Id.* at ¶ 7. Thus, each allegation and count against Anda in the Underlying Lawsuit arises out of Anda's distribution of its prescription drug products in West Virginia.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law." A declaratory judgment action seeking a declaration regarding insurance coverage may be decided on summary judgment "when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Md. Cas. Co. v. Fla. Atl. Orthopedics, P.L*, 771 F. Supp. 2d 1328, 1331-32 (S.D. Fla. 2011), *aff'd*, 469 Fed. App'x 722 (11th Cir. 2012). This declaratory judgment action is premised solely on the applicability, construction, and effect of the insurance policies and their terms and, therefore, should be decided by the Court as a matter of law.

### II. Choice of Law

A district court exercising diversity jurisdiction applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elc. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Grupo Televisa, S.A. v. Telemundo Communs. Group, Inc.*, 485 F. 3d 1233, 1240 (11th Cir. 2007). In Florida, choice of law for matters concerning obligations under an insurance contract is determined by "the *lex loci contractus* rule, which provides that the law of the state where an insurance contract is executed is the law that governs the rights and liabilities of the parties in determining an issue of insurance coverage." *Rando v. Gov't Employees Ins. Co.*, 39 So. 3d 244, 247 (Fla. 2010); *see also State Farm Mut. Auto Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006). An insurance

contract is deemed executed where the last act necessary to complete the contract was performed. *See Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116 (11th Cir. 1990). Generally, the contract is executed in the place where the policy is delivered. *Mid–Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1322 (S.D. Fla. 2010). Florida law applies to the Federal CGL Policies because it is undisputed that the policies were delivered to Andrx in Florida and that delivery of the contract was the last act in the execution of the policy.[3]

### III. Florida's General Law on an Insurer's Duty to Defend

Under Florida law, interpretation of an insurance policy is a question of law to be decided by the court. *Fabricant v. Kemper Independence Ins. Co.*, 747 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007); *see also Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010). The scope and extent of insurance coverage are defined by the language and terms of the policy. *Siegle v. Progressive Consumers Ins. Co.*, 788 So. 2d 355, 359 (Fla. 4th DCA 2001). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007). "Although ambiguous provisions are construed in favor of coverage, to allow for such a construction the provision must actually be ambiguous." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). A policy provision is not ambiguous simply because it is complex or requires analysis. *See Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). "[A] broadly written provision is not the same as an ambiguous one." *Interline Brands, Inc. v. Chartis Spec. Ins. Co.*, 749 F.3d 962 (11th Cir. 2014).

An insurer's duty to defend is based on allegations in the underlying complaint. If the complaint does not allege a claim that is covered by the insurance policy, then there is no duty to defend. *Md. Cas. Co. v. Fla. Atl. Orthopedics, P.L.*, 771 F. Supp. 2d 1328, 1332 (S.D. Fla. 2011). Thus, to make a determination regarding Federal's duty to defend, the Court must apply

---

[3] To the extent Anda asserts that the law of some other state applies, rather than Florida law, the Court could likely refrain from making a choice-of-law determination so long as the laws do not differ in any material respect. *See Levy v. Brown & Williamson Tobacco Corp.*, Case No. 96-2280-CIV, 1998 WL 35184005, *2 (M.D. Fla. Apr. 19, 1998) (citing *Williams v. Stone*, 109 F.3d 890, 893 (3rd Cir. 1997) ("[W]here the laws of [] two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question."). While Anda has not expressly asserted that any other law could apply, it has made oblique references to such a possibility. Federal will address this issue, if necessary, in the reply brief.

the language of the Federal CGL Policies to the facts alleged in the underlying complaint. *See Phila. Indemn. Ins. Co. v. Yachtman's Inn Condo Ass'n, Inc.*, 595 F. Supp. 2d 1319, 1322-23 (S.D. Fla. 2009). There can be no duty to defend where there is no potential for insurance coverage based on the allegations contained in the operative pleading. *See Mt. Hawley Ins. Co. v. Dania Dist. Centre*, 763 F. Supp. 2d 1359, 1364 (S.D. Fla. 2011), *aff'd*, No. 11-10596, 2013 WL 1150146 (11th Cir. Mar. 20, 2013).

The duty to indemnify is narrower than the duty to defend. *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005). As a result, a court's determination that the insurer has no duty to defend compels a finding that there is no duty to indemnify. *See Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006) (citing *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 421 (Fla. 3d DCA 1995)).

### IV. **Federal has no duty to defend or indemnify Anda for the Underlying Lawsuit.**

The Court can begin and end its analysis by applying the plain language of the Federal CGL Policies to the allegations in the Underlying Lawsuit. As made clear by the district court in *Richie* and the Florida Supreme Court in *Taurus*, the Federal CGL Policies provide no insurance coverage for the economic damages allegedly arising out of Anda's distribution of prescription drug products in West Virginia. Section A below establishes that the Federal CGL Policies provide no insurance coverage because there is no "bodily injury" alleged in the Amended Complaint; and Section B below establishes that, even if the Court finds that there is "bodily injury," the Federal CGL Policies expressly exclude insurance coverage for damages arising out of Anda's distribution of its prescription drug products.

#### A. **The Federal CGL Policies provide no insurance coverage for the economic losses alleged by the State of West Virginia in the Underlying Lawsuit.**

The threshold issue the Court must decide is whether the claimed economic damages in the Underlying Lawsuit trigger insurance coverage under the Federal CGL Policies, which only insure the insured's liability for "bodily injury" or "property damage"[4] caused by an "occurrence." The plain language of the Federal CGL Policies, when applied to the allegations

---

[4] Anda, in its filings in the Underlying Lawsuit, conceded that "there is no allegation of physical harm or property damage to Plaintiffs arising from [Anda's] alleged wrongful conduct." (ECF No. 169, p. 11) (citing Proposed Order Granting Defs' Mot. to Dism. Am. Compl. at 63, attached thereto as Exhibit C) (emphasis omitted). Accordingly, this section will address only the "bodily injury" language just as the *Richie* court did.

in the Underlying Lawsuit, makes clear that the answer is no. To be sure, *Richie* addressed this identical question and held that the State of West Virginia's claim for economic damages is not insured under a nearly identical CGL policy.

Before considering *Richie*, the Court should first examine the policy language defining "bodily injury" and "occurrence." Bodily injury, as defined in the policy, "means physical injury, sickness, or disease sustained by a person and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time." SOF, ¶ 29. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* Put simply, the Federal CGL Policies insure against claims for accidental physical harm to persons. *See, e.g., Allstate Ins. Co. v. Clohessy*, 32 F. Supp. 2d 1333, 1336 (M.D. Fla. 1998) ("In the context of insurance coverage, the overwhelming majority of jurisdictions which have considered the issue hold that 'bodily injury' standing alone or defined in a policy as 'bodily injury [or harm], sickness, or disease' is unambiguous and encompasses only physical harm.") (internal citations omitted).

The State of West Virginia does not, however, seek damages for any accidental physical harm to persons caused by Anda's products.[5] Rather, the Attorney General's Underlying Lawsuit against Anda (and eleven other pharmaceutical distributors) seeks to recover economic damages allegedly arising out of "the epidemic of prescription drug abuse and its costs to the State of West Virginia." *See* Am. Compl. ¶ 1. Anda admits that West Virginia is not seeking any recovery to compensate the individuals who suffered from the alleged prescription drug abuse.[6] (ECF No. 169, p. 11) ("Although the Amended Complaint alleges certain unspecified

---

[5] Anda's alleged intentional conduct, therefore, would not constitute an "occurrence," as that term has been routinely applied under Florida law, and this Court can and should enter summary judgment in favor of Federal on that basis alone. *See, e.g., Home, Ins. v. Hartford Fire Ins. Co.*, 164 Fed. App'x 950, 956 (11th Cir. 2006) (holding that intentional and deliberate acts by employer could not objectively be viewed "accidental" and, therefore, are not an "occurrence" under the subject CGL policy). For the sake of brevity, Federal adopts and incorporates herein Travelers' argument with respect to the lack of an "occurrence." *See* (ECF No. 180, pp. 18-21).

[6] As Anda argued to this Court in its response to Gemini's Motion for Judicial Estoppel, the West Virginia "Attorney General is not authorized to pursue individual claims on behalf of the West Virginia citizens." *See* (ECF No. 169, n. 4); *see, e.g., West Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 748 F. Supp. 2d 580, 590 (S.D. W. Va 2010); *accord Shunn Constr., Inc. v. Royal Ins. Co. of Am.*, 897 P.2d 89, 90 (Idaho 1995) (gathering cases that hold that legal entities cannot recover for bodily injuries). Thus, Anda concedes that the State of West Virginia is not seeking to recover for "bodily injury" damages incurred by its collective citizenry.

harm to individual citizens of West Virginia, there is no allegation of physical harm or property damage to [the State of West Virginia] arising from [Anda's] alleged wrongful conduct.") (emphasis omitted).[7] Instead, West Virginia is seeking to recover for monetary damages sustained by the state. Am. Comp. at ¶ 2; *see also* ¶ 24 (*"The State of West Virginia and its agencies* have in the past sustained enormous damages . . ."); ¶ 25 (*"The State of West Virginia and its agencies* have suffered substantial and irreparable harm . . ."); ¶ 26 ("A lawsuit for damages for past losses as have been sustained by the *State and its agencies* . . ."); ¶ 32 ("These Defendants . . . *contributed to damage to the State* . . ."); ¶ 57 ("Defendants and their agents have *caused the State to incur excessive costs* related to" the treatment and provision of services to citizens addictions to prescription drugs). Accordingly, as alleged in the Underlying Lawsuit, West Virginia "has sustained *economic harm* in the expenditure of massive sums of monies and will in the future continue to suffer *economic harm* unless the above-described public nuisance is abated." *Id.* at ¶ 53 (emphasis added).

Simply stated, West Virginia seeks to recover its additional financial expenditures arising out of prescription drug abuse. To that end, it will likely offer proof of "pill mills" saturating its communities, crime rates increasing, and an overall increase in the consumption of governmental services. *See* Am. Compl. ¶ 51. West Virginia is not seeking—nor would it even be permitted to seek—any actual damages incurred as a result of physical harm to its citizens arising out of prescription drug abuse. The Court should, therefore, find that the Underlying Lawsuit seeks to recover purely economic damages and that Federal's CGL Policies do not insure against purely economic damages.

The *Richie* court recently considered this same issue. The *Richie* case is an insurance coverage action against one of Anda's co-defendants in the Underlying Lawsuit. As such, the *Richie* court considered the same Underlying Lawsuit and whether it alleged "bodily injury" sufficient to trigger coverage under a CGL policy. *Richie* held that the State of West Virginia's claims do not allege "bodily injury" under materially identical CGL policy language. *See*

---

[7] Anda's interpretation of the Amended Complaint confirms the obvious—that the State of West Virginia is not seeking to recover for "bodily injury" or "property damage" as those terms are defined and commonly understood by every party to the lawsuit, including Anda.

- 8 -

*Cincinnati Ins. Co. v. Richie Enter. LLC*, 2014 WL 3513211 (W.D. Ky. July 16, 2014).[8] The Court reasoned that the allegations in the Amended Complaint relating to the physical harm suffered by the citizens of West Virginia are not an element of claimed damages—or an element of proof for that matter—but merely an explanation for the "actual complained of harm: the economic loss to the State of West Virginia." *Id.* at *5.

Other courts have routinely rejected attempts to insure economic damages under CGL policies. *See, e.g., Diamond State Ins. Co. v. Chester-Jensen Co.*, 611 N.E.2d 1083 (Ill. App. Ct. 1993) (holding that a CGL policy did not provide insurance coverage for the underlying claims brought by the State of Illinois for economic damages tied to the loss of employee productivity because there was no "bodily injury" as defined in the policy); *see also Colony Ins. Co. v. Montecito Renaissance, Inc.*, 2011 WL 4529948, at *4-5 (M.D. Fla. Sept. 30, 2011) (granting summary judgment in favor of an insurer because a CGL policy insured only bodily injury, not the economic damages claimed in the underlying litigation); *Key Custom Homes, Inc. v. Mid-Continent Cas. Co.*, 450 F. Supp. 2d 1311, 1317 (M.D. Fla. 2006) (granting summary judgment by reasoning that, under Florida law, a CGL policy protects the insured from physical damage to others but does not insure against damages that are purely economic in nature); *Transcon. Ins. Co. v. Ice Sys. of Am., Inc.*, 847 F. Supp. 947, 950 (M.D. Fla. 1994) (finding that the insurer was not obligated to defend or indemnify its insured under a CGL policy where the underlying state court action alleged purely economic damages); *Lazzara Oil Co. v. Columbia Cas. Co.*, 683 F. Supp. 777, 780 (M.D. Fla. 1988) (holding that the insurer had no duty to defend under the CGL policy at issue where a careful reading of the underlying complaint revealed that plaintiffs were seeking to recover pure economic loss).

*Richie* and the other courts got it right. To hold otherwise would extend coverage under the Federal CGL Policies far beyond the plain language of the policies and would transform a

---

[8] In its prior March 4, 2014 order, which was based on the original complaint that included a count to establish a court supervised "medical monitoring" fund, the court initially held that Cincinnati Insurance Company had a duty to defend. 2014 WL 3513211, at *1. The court amended its ruling when the West Virginia Attorney General filed an amended complaint removing all allegations related to the "medical monitoring" claim. *Id.* at 2. Relying heavily on the Seventh Circuit's decision in *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 616 (7th Cir. 2010), the court held that the Amended Complaint, without the "medical monitoring" claim, no longer contained allegations sufficient to trigger insurance coverage under the CGL policy's "bodily injury" provision. *Id.*

standard CGL policy into blanket insurance coverage for economic harm whenever bodily injury is a tangential factor. *Accord Diamond State Ins. Co.*, 611 N.E.2d at 1088 ("[The insured's] proposed interpretation [of "bodily injury" provision in CGL policy] would distort the meaning of this provision and extend its reach so as to provide coverage for any liability where bodily injury is a tangential factor."). In *Old Republic Ins. Co. v. West Flagler*, Florida's Third District Court of Appeal made the following observation in a case also seeking to extend insurance coverage under a CGL policy to include a duty to defend against an economic damages claim:

> The premiums paid to insurance companies are computed on the basis of the probabilities of occurrences coming to pass that are within the insurance coverage. Since the contracts are the drafting product of the companies, their provisions are, quite rightly, construed most strongly against the company in questionable cases. *This principle cannot be carried to the point of extending the coverage to make the policy something different than contemplated, however.* Where the interpretation urged is not only strained, but would encompass a risk not contemplated by the kind of policy issued nor intended to be undertaken by the company, the insurer is entitled to that fair construction which reflects the understanding of the parties.

419 So. 2d 1174, 1177 (Fla. 3d DCA 1982) (internal citations omitted) (emphasis added). The Federal CGL Policies are unambiguous. The Underlying Lawsuit clearly does not seek damages for "bodily injury" caused by an "occurrence," as those terms are defined in the Policies and have been interpreted by Florida courts. Accordingly, the Court should grant summary judgment holding that Federal has no duty to defend or indemnify Anda.

### B. The Federal CGL Policies provide no insurance coverage for damages arising out of Anda's product.

Even if the Court finds that West Virginia has alleged claims for accidental bodily injury under the CGL Policies, the Court still must consider Federal's products-completed operations hazard exclusion. The issue then becomes: Whether Federal's products-completed operations hazard exclusion eliminates Federal's duty to defend Anda for liability arising out of Anda's distribution of prescription drug products in West Virginia. On a certified question from the Eleventh Circuit, the Florida Supreme Court answered affirmatively the *same* substantive question when interpreting the *same* products liability exclusion in a Federal CGL Policy[9] based

---

[9] The Federal CGL policy language discussed in the *Taurus* case is identical to the Federal CGL policy language at issue in this case. Federal simultaneously herewith filed a Request for

on the *same* type of allegations against a gun manufacturer. *See Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.*, 913 So. 2d 528, 530 (Fla. 2005). The *Taurus* opinion controls the outcome here. The products-completed operations hazard exclusion in the Federal CGL Policies bars insurance coverage for the claims in the Underlying Lawsuit because all alleged damages arise out of Anda's distribution of its products.

Beginning with the policy language, the Federal CGL Policies exclude coverage for "all bodily injury and property damage occurring away from premises you own or rent and *arising out of* your product or your work[.]" SOF, ¶ 32 (emphasis added). The Florida Supreme Court—interpreting the same Federal policy language—explained that, under Florida law, the phrase "arising out of" is construed broadly.

> The term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.' . . . [T]his requires more than a mere coincidence between the conduct (or, in this case, the product) and the injury. It requires 'some causal connection, or relationship.' But it does not require proximate cause.

*Id.* at 539-40 (citations omitted); *see also Md. Cas. Co. v. Smartcop, Inc.*, 2012 WL 4344571, at *3 (S.D. Fla. Sept. 21, 2012) (Moore, J.) (recognizing that "[t]he Florida Supreme Court has consistently interpreted the phrase 'arising out of' broadly to encompass all of the following meanings: 'originating from, having its origin in, growing out of, flowing from, incident to, or having a connection with.'").

*Taurus* is factually analogous to the present case. The *Taurus* Court held that in a CGL policy containing a products-completed operations hazard exclusion there was no insurance coverage available to a gun manufacturer in lawsuits brought by "a number of municipalities around the nation seeking compensation for expenses incurred as a result of gun violence in their communities." *Taurus*, 913 So. 2d at 530. The liability actions against Taurus alleged that the gun manufacturer

> failed to make guns safe and prevent foreseeable misuse, . . . failed to provide appropriate warnings about the dangers of guns; that they designed manufactured and marketed guns in excess of the demand that might be expected from legitimate consumers thereby

---

Judicial Notice seeking for this Court to take judicial notice of the Great Northern and Federal Policies filed with the court in the *Taurus* case.

>       guaranteeing that the surplus would enter the illegal firearms
>       market, and that they were aware that the guns they manufactured
>       and sold would fall into the hands of criminals, but took no action
>       to prevent it; and that they falsely and deceptively claimed through
>       advertising and promotion of their handguns that the ownership
>       and possession of handguns in the home increases one's security.

*Id.*[10] Whether the product is a gun (as in *Taurus*) or a prescription drug (as in this case) is of no consequence. In both instances, the issue is the same: whether a CGL Policy with a products-completed operations hazard exclusion provides insurance coverage for claims brought by a governmental entity seeking economic damages arising out of the distribution of the insured's product.

Answering the question in the negative with respect to an identical Federal CGL policy form, the Florida Supreme Court held that the products-completed operations hazard limitation applied and "that the phrase 'arising out of your product' . . . [is] unambiguous." *Id.* at 539. Given the broad interpretation of the unambiguous phrase "arising out of," the Court held that the Federal CGL policy excluded coverage for the alleged "damages for increased health care costs and increased costs for police and emergency medical services due to gun violence, and the costs associated with the prosecution of gun-related crimes." *Id.* at 540.

In reaching its decision, the Florida Supreme Court also analyzed and agreed with the holdings in three other federal decisions where the courts found no insurance coverage for gun manufacturers under CGL policies in suits relating to the sale and distribution of their firearm products. *Id.* (citing *Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co.*, 220 F.3d 1 (1st Cir. 2000); *Beretta U.S.A. Corp. v. Fed. Ins. Co.*, 17 Fed. App'x 250 (4th Cir. 2001); *Mass. Bay Ins. Co. v. Bushmaster Firearms, Inc.*, 324 F. Supp. 2d 110 (D. Me. 2004)). Each of those cases addressed a products-completed operations hazard exclusion in the context of cases against gun manufacturers, and in each case, the court held that there was no coverage under the CGL policy.

In *Bushmaster*, the gun manufacturer was sued for creating a "public nuisance" and for negligently distributing assault weapons. 324 F. Supp. 2d at 111. The underlying claimants alleged that the manufacturers' negligence allowed the "diversion of lethal firearms into criminal

---

[10] The underlying suits alleged causes of action for "negligence, negligent supervision, negligent marketing, negligent distribution, negligent advertising, negligent entrustment, public and private nuisance, failure to warn, false advertising, and unfair and deceptive trade practices." *Id.*

hands." The court held that it was "indisputable that the Bushmaster assault rifle is [Bushmaster's] product within the meaning of these policies and that the injuries it inflicted occurred away from Bushmaster's premises and after Bushmaster had completed all its work on manufacturing the assault rifle and had surrendered possession of it." *Id.* at 112. Therefore, the court held that the damage caused by the rifle was "within the products-completed operations hazard and excluded from coverage." *Id.*

*Brazas* involved tort actions by gunshot victims on a theory that gun distributors had "negligently, willfully, knowingly, and recklessly flooded the firearms market." 220 F.3d at 3. The court held that these claims were excluded by the products-completed operations hazard exclusion. *Id.* Although the court noted that the lawsuits did not identify any particular guns sold by Brazas as the cause of any injury, the court held that the allegations of injuries "arising out of" firearms products brought the allegations within the policy's exclusion. *Id.* at 3, 8.

Finally, the *Beretta* case involved multiple lawsuits by municipal governments across the country and a class action, all alleging "negligent marketing and distribution of guns and public nuisance" and seeking "to recover expenses allegedly incurred in treating and caring for people who have suffered gunshot injuries." 17 Fed. App'x at 252. Similar to how Florida courts have addressed this policy language, the *Beretta* court (analyzing Maryland law) interpreted the policy phrase "arising out of" broadly to mean "originating from, growing out of, flowing from, or the like." *Id.* at 253. Applying this definition, the court held that the products-completed operations exclusion applied to the claims and thus that no insurance coverage was afforded under the policy.[11]

The Federal CGL Policies exclude insurance for "bodily injury or property damage included within the products-completed operations hazard[,]" which "includes all bodily injury and property damage occurring away from" Anda's premises and "arising out of" "**any goods or products**, other than real property, manufactured, sold, handled, **distributed** or disposed of" by Anda. *See* SOF, ¶¶ 30-32.

---

[11] In *Beretta*, the district court summarily concluded (in dicta) that but for the products-completed operations hazard exclusion, the court would have rejected the insurer's argument that it did not have a duty to defend because the lawsuit against the gun manufacturers does not allege a "bodily injury." *Beretta U.S.A. Corp. v. Fed. Ins. Co.*, 117 F. Supp. 2d 489, 496 (D. Md. 2000), *aff'd*, 17 Fed App'x 250 (4th Cir. 2001). Beyond dicta, the court's summary treatment of the issue does not persuade in light of the *Richie* court's well-reasoned and thoughtful consideration of this issue with respect to the allegations in the Underlying Lawsuit.

The allegations against Anda in the Amended Complaint unequivocally arise out of Anda's distribution of prescription drug products in the State of West Virginia. *See, e.g.,* Am. Compl. ¶ 2 ("The Defendants each **distribute prescription drugs** closely identified with the prescription drug abuse problem in West Virginia."); ¶ 3 ("These Defendants are **major distributors of controlled substances who have supplied controlled substances to drugstores and pharmacies** . . . ."); ¶ 8 ("The Defendant drug distributors profit from this epidemic **by distributing controlled substances in West Virginia** . . . ."); ¶ 30 ("These Defendants have willfully turned a blind eye . . . **by regularly distributing large quantities of commonly-abused controlled substances** . . . ."); ¶ 43 ("Defendants . . . have created and continue to perpetrate and maintain a public nuisance by the **massive distribution of abused prescription drugs** for use by the Citizens of West Virginia"); *see also id.* at ¶ 7 ("The State of West Virginia seeks to recover the damages it has incurred and continues to incur and will incur in the future in addressing and combating the prescription drug abuse epidemic in West Virginia and in addressing its effects."). Accordingly, the *Taurus* decision is directly on point, it is dispositive, and the Court must find that there is no insurance coverage under the Federal CGL Policies for the claims made by West Virginia against Anda.

The products-completed operations hazard exclusion in the Federal CGL Policies is broad and will exclude coverage for many claims—any claim that has at least "some causal connection, or relationship" between the insured's product and the damages sought against the insured. *See Taurus*, 913 So. 2d at 540. The term "arising out of" is broadly interpreted under Florida law, regardless of whether the term is used in an insuring agreement or an exclusion. *See, e.g., Falcon Trust Grp., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 725 F. Supp. 2d 1363, 1370 (S.D. Fla. 2010) (granting summary judgment for the insurer under *Taurus*' broad interpretation of the phrase "arising out of"); *Continental Cas. Co v. City of Jacksonville*, 654 F. Supp. 2d 1338 (M.D. Fla. 2009) (granting summary judgment for the insurer because the term "arising out of" is unambiguous and interpreted broadly); *see also Band v. Twin City Fire Ins. Co.*, 2012 WL 1142396 (M.D. Fla. Apr. 4, 2012) (holding that an insurer had no duty to defend under *Taurus's* broad interpretation of "arising out of"). The fact that the provision is broadly written, however, does not make it ambiguous. *See Interline,* 749 F.3d 962 (affirming the district court's summary judgment in favor of the insurer in accordance with *Taurus*).

This is the right result.  Anda received the benefit it bargained for when it purchased the Federal CGL Policies excluding coverage for liability arising out of Anda's distribution of prescription drug products.  The Eleventh Circuit, just this year, explained why exclusions such as this one are not only sound, but actually helpful from an economic sense:

> Exclusions—like this one—allow creation of a policy that provides the insured the coverage it needs at a price it can afford.  Without such exclusions, coverage would undoubtedly be more expensive.  A company primarily needs insurance for risks it may be ill equipped to anticipate or prevent (e.g. property damage).  Without an exclusion, a company would also have to pay for coverage of risks it can easily anticipate and avoid (e.g. violations of laws related to its business).  And, coverage for violations of law creates a moral hazard that could substantially increase insurance costs, especially when the coverage is closely related to the company's business.

*Interline*, 749 F.3d at 967.  Just as the Court recognized in *Taurus*, Anda could have purchased optional coverage that is the "mirror image" of the exclusion that would "cover[] everything the exclusionary provision excludes."  913 So. 2d at 540.  In fact, Anda did purchase the "mirror image" Products Policies from other insurers, including Gemini.  *See* SOF, ¶¶ 21-25, 34.

### V. Conclusion

The Court should enter summary judgment against Anda on two separate grounds.  First, the Court should find, just as the *Richie* court did, that the Federal CGL Policies provide no insurance coverage for the economic damages in the Underlying Lawsuit because there is no allegation of a "bodily injury" caused by an "occurrence."  Second, and in any event, this Court must follow *Taurus* and hold that the products-completed operations hazard exclusion in the Federal CGL Policies expressly excludes coverage for injuries arising out of Anda's distribution of prescription drug products in the State of West Virginia.

Dated: October 20, 2014

                                            Respectfully submitted,

**PHELPS DUNBAR LLP**

/s/ *Lawrence P. Ingram*
Lawrence P. Ingram, Fla. Bar No. 855510
Lawrence.Ingram@phelps.com
Jason P. Stearns, Fla. Bar. No. 059550
Jason.Stearns@phelps.com
Raquel R. Jefferson, Fla. Bar. No. 103758
Raquel.Jefferson@phelps.com
100 South Ashley Drive – Suite 1900
Tampa, Florida 33602-5311
(813) 472-7550; (813) 472-7570 (FAX)
*Attorneys for Plaintiffs/Counter Defendants,
Federal Insurance Company and Great
Northern Insurance Company*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 20th day of October, 2014, a true and correct copy of the foregoing motion was served by e-mail to all counsel of record.

                                            /s/ *Lawrence P. Ingram*